KANNER, Acting Chief Judge.
Final decree of accounting entered by the chancellor is brought here for review by the defendant-appellant, Karl Kreher. The accounting rendered was consequent upon this court’s decisions which represented the culmination of prior appeals. See Prescott v. Kreher, Fla.App.1961, 123 So.2d 721 and 731, certiorari denied Fla.1961, 131 So.2d 206. Appellees, with Kreher, were members of an earnings pool and were sales employees of A. M. Kidder & Company. The accounting was sought as a result of transactions flowing from the corporate organization and financing of the Jim Walter Corporation, a firm engaged in the construction of homes. As a member of the earnings pool, Kreher procured a leave of absence from A. M. Kidder & Company to’ devote his full time to the organization and: financing mentioned but by agreement retained his senior membership in the earnings pool. We held, in view of the terms of that agreement, that because a fiduciary obligation existed among the members of the earnings pool, a full accounting should be made by each[1].
Under his first appeal point, Kreher contends that his ultimate individual and' separate investment amounts to 27.66 per cent and that the earnings pool is entitled' to share in only 72.34 per cent of the total amount of money and securities received from the Walter group. It will be recalled from Prescott v. Kreher, supra, that Kreher *318 guaranteed the subscription of the entire plan for financing of the new Walter corporation and guaranteed to and did raise an initial deposit of $105,450. On July 11, 1955, Kreher delivered to the Walter group a sum in excess of the required guarantee fund of $105,450 and was given an itemized receipt for checks of various persons for specified securities in the total sum of $107,-591.40. However, the only part of those funds which the record shows to have belonged to Kreher was a check for $3,300 issued to him from A. M. Kidder & Company against Kreher’s commission account representing payment of $2,400 by Kreher for 240,000 warrants which he secretly purchased. In his final decree of accounting, the chancellor did grant certain allowances to Kreher. He properly rejected the percentage formula involving the guarantee fund which Kreher contended for. ' The fractional interests of the respective members of the earnings pool as determined by the chancellor upon the basis of their February, 1955, agreement, or %ths for Prescott, %ths for Kuhn, %ths for Kreher, and %th for each of the other members, were reviewed by this court in the interlocutory appeal and were not disturbed.
A grievance set out by Kreher under his point two is that appellees were not required by the chancellor to account for commissions earned by them during the first ten months of 1956. In this connection, Kreher states that by the same token, appellees should not be permitted to share in that part of the option money earned by Kreher during this period of time, or the money and securities received from the Walter group as a result of the claim therefor. Kreher continued to receive salary checks from the Walter corporation through October, 1956; and after he had delivered the first of these salary checks to the pool, the agreement was that Kreher would thenceforth keep his salary checks and the other members would retain and divide their commissions. The chancellor correctly determined in the light of this agreement that the earnings pool need not account to Kreher for commissions that went into the earnings pool from December, 1955, until October, 1956. Nor was Kreher required to account for his salaryduring that period of time.
Nor do we find as tenable Kreher’s contention under his point three that he should have been allowed interest on $73,885 “option money” which he claims he personally borrowed for the guarantee fund. We find nothing in the record to justify allowance of such a claim.
Lodged by Kreher under his point four is a protest that the chancellor should have made findings of fact or adjudication relative to the claimed interest of Martha Kreher in the securities involved. Martha Kreher was not a party to this action and so had no part in the long course of the earnings pool litigation which had been fought through to its concluding days, including appeals, upon the defense of Kreher that he was sole and exclusive owner of the securities involved. The chancellor acted properly in refraining from making any findings of fact or adjudication in this suit upon that subject. Moreover, Kreher’s motion to consolidate with the present case an action instituted by Martha Kreher during the closing days of this litigation was denied ; upon an interlocutory appeal by Kreher, we affirmed the chancellor’s order of denial. Fla.App.1961, 134 So.2d 287.
Finally, Kreher through his point five challenges a finding of fact by the chancellor, claiming that, although plaintiffs Prescott and Kuhn were required to account for 2,000 FRB warrants, the evidence shows that they received, instead 2,000 of the more valuable B warrants. This assault appears to be based upon an incorrect premise, since the evidence establishes that the terminology employed accurately designates the securities in question as FRB warrants.
We have not detailed the evidence nor various items comprising the accounting approved by the chancellor but refer only to the points raised. In his final decree, the chancellor, by his analysis and conclusions, has directed comprehensively and lucidly *319 all steps essential to a fair adjustment and distribution of the pertinent assets. Certain allowances have been made, together with a clear statement of each member’s distributive share, his outstanding obligations to the earnings pool, and the manner in which these obligations should be reconciled against the previously determined percentage share of each. In this appeal, we are dealing with certain findings as to the accounting. It is our view that the chancellor has not committed reversible error under the points complained of.
Affirmed.
SMITH, J., and TAYLOR, HUGH M„ Associate Judge, concur.

. “The cause accordingly must be reversed for an accounting, with the sums, warrants, or securities received by Kreher to he consolidated with those received by Prescott, Kuhn, and Maudese, and with Prescott and Kreher alike divulging their personal preferential profits, including the finder’s fee collected by Prescott. It is thus intended that there be a full accounting between the members of the earnings pool with respect to their transactions with the Walter group excepting the fifty-five portfolios of securities purchased by Kreher previously mentioned.” Fla.App. 123 So.2d 731.