KANNER, Acting Chief Judge.
Martha Kreher, the plaintiff-appellee, by virtue of an oral agreement claimed to have been made with her husband, Karl Kreher, defendant-appellee, around mid-June of 1955, for a consideration of $500, instituted the present action against her husband and the other members of a certain earnings pool, asserting that those defendants were liable to her for 50,000 warrants of the Jim Walter Corporation to which she says she became entitled through that agreement. The chancellor determined that she is beneficial owner of fkths of the securities received by Kreher in settlement of his claim for 240,000 warrants of the Jim Walter Corporation, the purchase of which had originally been kept secret from defendants-appellants, his fiduciary associates in a certain earnings pool. Through prior litigation, it was held that purchase of these securities inured to the benefit of the earnings pool and that a full accounting by members of the earnings pool, each to the other, should be had. Prescott v. Kreher, Fla.App.1961, 123 So.2d 721, certiorari denied by the Florida Supreme Court, Fla.1961, 131 So.2d 206. The chancellor’s final decree of accounting entered pursuant to that determination, appealed by Kreher, has been affirmed under date of March 27, 1963, the date also of the present decision. Kreher v. Prescott, Fla.App.1963, 153 So.2d 316.
In 1955, Karl Kreher purchased from the Walter partners preferentially at one cent each 240,000 warrants of the Jim Walter Corporation, in the corporate organization and financing of which Kreher, as a member of the earnings pool, had been engaging. This purchase, kept secret by Kreher, came to light two years later, giving rise to the earnings pool accounting case mentioned. The chancellor in his final decree ordering distribution directed that the proceeds procured by Kreher in settlement of his claim for the securities involved be divided among the earnings pool members upon the basis of their respective fractional interests originally agreed upon by them as to the assets of the earnings pool in February of 1955, subject to certain allowances and deductions.
In his settlement for the 240,000 warrants, Kreher received 25,750 A warrant options and 20,000 FRB warrants, a portion of these going to pay Kreher’s attorneys’ fees and a portion, later converted, being held in escrow by the Marine Bank and Trust Company. Martha Kreher alleged in her complaint that, of the monies deposited by Karl Kreher to guarantee the entire plan of financing for the Jim Walter Corporation, in particular the sum of $2,400 for the 240,000 warrants he was to receive from the Walter group, $500 was supplied by her “as a customer to purchase and pay for” the securities which she says Karl Kreher persuaded her to buy as an investment and that the defendants, comprising the earnings pool, a common enterprise, should deliver to her those securities or their converted equivalent. It is to be noted that, in view of the settlement mentioned, the claim for 50,000 warrants asserted by Martha Kreher exceeds the total now remaining of the assets which were held to have inured to the benefit of the earnings pool. As to this lack, Martha Kreher sought a deficiency decree.
Karl Kreher admitted his wife’s claim and his liability to deliver to her the warrants contended for or their converted equivalent or value. Appellants denied the claim, alleged affirmative defenses, and cross-claimed against Kreher for any recovery which might be had by Martha Kre-her through her suit.
In the opinion portion of his decree, the chancellor concluded:
“That upon the settlement between KARL KREHER and the Walter Group, et al, there was included in such settlement the claim of MARTHA KREHER, in a prorata part of the 240,-000 warrants as well as the claim of the Earnings Pool in the 26 portfolios *321 and its prorata part of the 240,000 warrants.
“KARL KREHER was acting in a fiduciary capacity for both MARTHA KREHER and the Earnings Pool, and because of this fiduciary relationship with the Earnings Pool, he could not make a binding agreement to deliver to MARTHA KREHER all or any part of the leÁi of the securities from said settlement in which the Earnings Pool had an interest.
“That MARTHA KREHER is the beneficial owner of of the securities obtained by KARL KREPIER in the settlement of his claim for 240,000 warrants of the Jim Walter Corporation with the Walter Group, et al, on February 6, 1959.”
The chancellor further found to the effect that appellants had failed to prove their affirmative defenses and their cross-claim and ordered defendants-appellants and defendant-appellee, Karl Kreher, to account to Martha Kreher.
Two appeals have been entered, one designated interlocutory and one final, brought by all the defendants except ap-pellee Karl Kreher; and Martha Kreher has cross-appealed. We deem the decree of the chancellor to be final in its nature and effect.
Four of the five points advanced by appellants on this appeal are predicated upon certain affirmative defenses and their cross-claim alleged below. The first point is that “Kreher’s individual agreement with his wife was not binding on or assumed by the earnings pool, cannot mitigate Kreher’s transcending obligation to his associates, and must accordingly be satisfied by Kreher alone.” This court’s decision relates to and is resolved upon considerations flowing out of the quoted issue.
It is the position of Martha Kreher that her agreement with appellee Karl Kreher was a valid one for valuable consideration and that it is binding against her husband and the appellants, his earnings pool associates. As to this, she contended that $500 was supplied by her as a customer to purchase and pay for the mentioned securities and that Kreher and the other members of the earnings pool, as members of a common enterprise, had disregarded her rights. In this connection, she asserts in her brief that a resulting trust was created and established.
In arriving at his conclusions, the chancellor stated, among other things, that the earnings pool arrangement covered the period between February of 1955 and December 31, 1955. He found that about mid-June, 1955:
“* * * MARTHA KREHER entered into an agreement with KARL KREHER for a valuable consideration, obligating KARL KREHER to purchase for her 25,000 bond warrant options (now known as A warrant options) and 25,000 common warrants (known as B warrants and later F.R.B. warrants) which would be sold by the Walter Group to him at the issue price of one cent each, or a cost to her of $500.00, with the understanding that the warrants would be delivered to her when he was entitled to them under his agreement with the Walter Group.”
He indicated that Kreher’s agreement with the earnings pool as to the Walter venture was under date of July 6, 1955; that his guarantee agreement with the Walter group was dated June 27, 1955; and that on July 11, 1955, Kreher paid his guarantee deposit.
This court’s initial opinion in Prescott v. Kreher, Fla.App.1961, 123 So.2d 721, contains a summary of certain background data. There, we held interlocutorily that, because a fiduciary obligation existed among members of the earnings pool, a full accounting should be rendered by each. As to the agreement between Kreher and the other earnings pool members with respect to the Walter venture, we said in the narrative portion of our decision at page 723:
“It was understood and agreed that Kreher would continue drawing from *322 the earnings pool and would, in turn, pay into the earnings pool any compensation which he might earn for services in connection with the financing of the Jim Walter Corporation and the sale of its securities. Members of the earnings pool also agreed to help to whatever extent they could without involving A. M. Kidder & Company. Pursuant to the agreement, Kreher, although on official leave of absence from the Kidder company, did continue to draw from the earnings pool until sometime in December of 1955. Kreher served as the representative of the earnings pool members with reference to the corporate organization, financing, and sale of securities of the Jim Walter Corporation.”
Later, in considering specifically the decree of the chancellor, we pointed out at page 726, as to the agreement:
“The court identified that transaction as being one by which Kreher was to contribute his labor, experience, and shill in the handling of the Walter endeavor and by which the other members, in return, were to and did continue him in the earnings pool. Thus Kreher, continued the court, was to turn over anything and everything he received from the Walter transaction to be divided among the members of the earnings pool in tire same proportion as before.”
We then stated at page 727:
“Holding that the members of the earnings pool were associates in a common enterprise and had a duty to each other to make a fuli disclosure, the lower court found that, although Kre-her put up his own money for the purchase of the 240,000 warrants from the Walter group, his opportunity to purchase those warrants was the result of his fiduciary position in handling the Walter transaction as a representative of the earnings pool and that this purchase constituted a secret profit which in equity should inure to the benefit of the earnings pool. As to this, we agree.”
In addition to the oral agreement which' Martha Kreher says she made with her husband in mid-June, 1955, there was also a letter written by her to her husband, dated February 6, 1959, attempting to set up an agreement as to the warrants concerned. This was held by the chancellor to be of no binding effect [1], a determination which Martha Kreher claims was erroneous. We are in accord with the chancellor’s rejection of this instrument. It may be noted that all the evidence with respect to the creation of the claimed oral agreement was contained within the testimony of Martha and Karl Kreher. Until 1957, Kreher’s purchase of the 240,000 warrants was kept secret from his earnings pool fiduciaries.
An extraordinary combination of circumstances characterizes and sets apart the particular situation here considered. Summarizing these, we begin with February of 1955, when by creation of the earnings pool, Kreher’s fiduciary relationship with its other members commenced. By May or early June of 1955, Martha Kreher’s husband, Karl Kreher, had completed his plan of financing for the Walter group, including the proposed purchase of the 240,000 warrants preferentially at one cent each. Martha Kreher worked with her husband in the course of his formulation and pres *323 entation of the Walter plan, discussing it with him, typing various documents, and being familiar with others. She was the first person with whom her husband talked about the 240,000 warrants; they discussed it; and she typed what Kreher called the covering letter dated June 10, 1955, from Kreher to Walter setting out his plan of finance, which' specified the 240,000 warrants to be purchased by Kreher. Prior to this, Martha Kreher had for 25 years or more served as a legal secretary, but she stayed home after Spring, 1955, to assist her husband in the Jim Walter Corporation work.
As stated, her alleged agreement with her husband was set at around mid-June, 1955. The testimony reveals that she had knowledge of the June 27, 1955, guarantee agreement of Kreher on or about the time Kreher prepared it and that she repeatedly read the carbon copy of Kreher’s handwritten draft. In it, the earnings pool connection was specifically discussed. Kre-her, on July 6, 1955, procured a leave of absence from A. M. Kidder & Company, with the reciprocal understanding among the other earnings pool members and Kre-her whereby his participation in that group would remain undisturbed. On July 11, 1955, Kreher paid the $2,400 for the warrants, along with a greater sum representing the guarantee deposit. When Walter attempted to settle with the earnings pool in 1957, there was discussion of it by Martha Kreher with her husband. As to the terms proposed, she expressed dissatisfaction. Kreher refused to settle; through the settlement proposal, his secretly purchased warrants, at the time still unknown to the other earnings pool members, would have been wiped out.
Meanwhile, the subject of the 240,000 warrants had lain dormant, until Kreher, by letter to Walter dated April 19, 1957, asserted his claim to them, again setting out a fiduciary connection with the earnings pool and closing with a postscriptural mention of money given him by Martha Kreher for purchase of warrants. Martha Kreher was familiar with this letter on or about the time it was written, and she had known from the first about the 240,000 warrants; but it was through disclosure by Walter, who showed this letter to certain of the earnings pool members, that Kreher’s clandestine purchase was brought to light to his earnings pool associates.
Up to this point, the narrative spans a period of two years during which the other members of the earnings pool as to the 240,000 warrants or anything connected with them remained in total darkness. The Krehers, who had worked together on the Walter plan, both moved ahead throughout those two years in the silence of knowledge undisclosed, although Kreher in the course of his earnings pool association was under duty. faithfully to represent its interests and to disclose fully everything which might affect those interests. Upon discovery, Kreher began his fight to retain for himself the warrants he had purchased, asserting sole and exclusive ownership of them throughout the course of the litigation brought by him as to the securities, as well as in the earnings pool litigation against him, including appeals to this court, thence by certiorari to the Florida Supreme Court. Martha Kreher knew this, knew that the 240,000 warrants were the subject of those actions, and as to the earnings pool accounting case, knew that Kreher had employed defense counsel.
In the interim between the time of the settlement and the bringing of the earnings pool action, a period of more than four months, the securities were in a custodian account, placed there with directions by Kreher that they were to be held pursuant to his instructions. Martha Kreher was present at a closing held by order of the chancellor on January 24, 1961. There, the subject warrants were converted and endorsed by her husband for transfer, in the process of which $162,362.06 of appellants’ monies were utilized. As we have pointed out, she instituted her suit only two days before Kreher was to file his accounting in the closing days of the earnings pool *324 accounting suit. This occurred after Kre-her, asserting sole ownership of the securities, had failed in that litigation, this suit coming upon the heels of denial by the Supreme Court of Kreher’s petition for writ of certiorari as to the interlocutory appeal. Fourteen days prior to the commencement of this suit, Martha Kreher received from her husband $5,250 for the specific purpose of instituting the action against himself and his erstwhile earnings pool associates.
From the above mentioned circumstances, the husband-wife situation heightens and accentuates the unusual nature of the problem before us. The closeness between the two as to the work which was done in the formulation and launching of Kreher’s plan for the Walter group, elements of knowledge of Martha Kreher, and the wife’s peculiar position of advantage to know and understand that which transpired as to her husband’s activities with respect to the particular situation are inescapable considerations. Important, too, is the absolute ignorance on the part of Kreher’s earnings pool associates concerning anything connected with the 240,000 warrants for a period of two years. Certainly there was no hint during those years that there had ever been any intention of an attempt to curtail that which the earnings pool members were to receive through the opportunity which they had afforded Kreher. At no time did the earnings pool acquiesce in or sanction any plan at all whereby Kreher’s wife would participate in that to which they would be entitled under their agreement or any plan whereby the earnings pool would assume liability for a personal and private arrangement between Kreher and his wife. Yet, such a proposal would materially have affected their rights under their fiduciary arrangement with Karl Kreher and the reciprocal terms which it involved. Even the February 6, 1959, letter from Martha Kreher to her husband attempting to set up an agreement was shown to no one until institution of this suit.
We must differ with the chancellor as to his conclusion that Karl Kreher, at the time of his purchase and at the time of the settlement, acted in a fiduciary capacity for his wife as well as for the earnings pool. Under the circumstances here, the fiduciary duty which, from February through December of 1955, imposed upon Karl Kreher an obligation of good faith and loyalty as to the interests of his earnings pool associates refutes the theory that, in his purchase of the 240,000 warrants and in his settlement therefor, Karl Kreher could proceed also under a separate and long undisclosed representation of his wife inimical to those interests. It should here be emphasized that from February of 1955 until December 31, 1955, there was no relinquishment nor cessation of Kreher’s senior membership in the earnings pool and the reciprocal fiduciary obligation which this status involved. There was no connection or privity between Martha Kreher and the earnings pool. Kreher’s private agreement with his wife, emanating from secret knowledge possessed by the two to the exclusion of the earnings pool for two years, by its very nature constituted solely a personal matter between himself and his wife. Further, the aspects of the case which we have mentioned take it outside the category of ordinary third party transactions. Martha Kreher’s assertion of a resulting trust entitling her to recovery against the earnings pool, in view of what we have said, must fall. Kreher admits liability; this is a matter which must rest between him and his wife.
We are convinced that equity should not, in the light of the particular situation before us, call to account to Martha Kreher those members of the earnings pool by or on behalf of whom this appeal is brought. In sum, Kreher’s purchase of the 240,000 warrants, despite Martha Kreher’s claim to the contrary, constituted a secret profit which inured to the benefit of the earnings pool. Accordingly, the decree of the chancellor must be reversed and the complaint *325 of Martha Kreher against these appellants should be dismissed.
In view of the foregoing, the matters raised by Martha Kreher under her cross-appeal are not sustainable against the appellants.
Reversed and remanded for conformity to this opinion.
SMITH, J., and TAYLOR, HUGH M., Associate Judge, concur.

. “MARTHA KREHER, although knowing of KARL KREHER’s fiduciary relationship and obligation to the Earnings Pool directed a letter to KARL KREHER attempting to set forth such an agreement which KARL KREHER approved, but such letter was of no binding effect, for among other reasons, it was too ambiguous to be the basis for any binding agreement, was not based upon any consideration flowing to the Earnings Pool and was in violation of KREHER’s fiduciary relationship and obligation to such Earnings Pool, and he had no apparent or actual authority in such respect.”